IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

COREY BERRY,                          )
                                      )
        Plaintiff,                    )
                                      )        NO. 3:19-cv-00830
v.                                    )        JUDGE RICHARDSON
                                      )
SAGE DINING SERVICES, INC.,           )
                                      )
        Defendant.                    )
                                      )

## MEMORANDUM OPINION

Pending before the Court is Defendant Sage Dining Services, Inc.'s Motion for Summary

Judgment (Doc. No. 29, "Motion"), which is supported by a Memorandum of Law (Doc. No. 29-

1). Plaintiff has filed a response (Doc. No. 31), and Defendant has filed a reply (Doc. No. 34).

Each party has filed responses (Doc. Nos. 32 and 34-1) to the other party's statement of

(purportedly) undisputed facts.

## BACKGROUND[1]

Defendant SAGE Dining Services Inc. provides dining programs for schools, colleges, and

corporations throughout North America. (Doc. No. 33-6 at 2). Defendant operates the dining

facility at University School of Nashville ("USN"). (Doc. No. 32 at ¶ 1). On August 7, 2017, Kelly

Mozzi, Defendant's Director of Food Services at USN and Plaintiff's supervisor, hired Plaintiff to

fill a cashier position. (*Id.* at ¶¶ 3, 5). Plaintiff's job duties as a cashier included charging students

---

[1] The following facts, unless somehow qualified herein (as for example by "[deponent] testified that . . ."), are taken as true for purposes of this motion, because they are either: (1) asserted and evidentially supported by one party and not rebutted by the other side; (2) otherwise not in genuine dispute; (3) asserted and evidentially supported by the non-movant and thus credited by this Court even if disputed by the movant; or (4) subject to judicial notice. All testimony referred to herein is deposition testimony.

for food, setting up the drink station, helping out in the kitchen, and cleanup in the afternoon. (*Id.* at ¶ 6).

Plaintiff suffers from epilepsy, (Doc. No. 32 at ¶ 24), and sometimes experienced seizures while at work (*Id.* at ¶ 26). During at least one such seizure occurring at work, Plaintiff appeared to be rendered completely unconscious. (*Id.* at ¶ 30). Plaintiff testified that when he has a seizure, he always needs at least one day to recover. (*Id.* at ¶ 28). Plaintiff testified that he had seizures approximately once a week. (*Id.* at ¶ 29). However, he later testified that he would sometimes go weeks without having a seizure and that when he did have a seizure it did not always affect his ability to attend work. (*Id.* at ¶ 29). Plaintiff testified that he sent in multiple doctor's notes concerning his epilepsy seeking the accommodation of time off for recovery when he had a seizure. (*Id.* at ¶ 11).

Plaintiff testified that in March 2018, he notified Defendant that he was having discussions with his physician about getting brain surgery to alleviate his seizures and that Ms. Mozzi was aware of this. (Doc. No. 33-5 at 14 (Dep. at 49)).[2] Plaintiff further testified that he was told that he needed more hours to qualify for FMLA leave and therefore decided to postpone scheduling the surgery until he was able to qualify for FMLA leave. (*Id.*). In his deposition, Plaintiff agreed that he had not worked the number of hours required (1,250) to qualify for FMLA leave but contended that he was "close." (*Id.* at 20).

During the week of September 17, 2018, Plaintiff experienced at least two seizures and was unable to work for at least two of the five workdays. (Doc. No. 32 at ¶ 33). On October 8, 2018, Plaintiff received a note from his physician indicating that he was continuing to have seizures

---

[2] Citations to deposition transcripts need to account for the fact that each page in ECF contains four pages of a deposition transcript. Accordingly, such citations are in the following format: ([Docket No. where transcript is found] at [page number according to ECF pagination] (Dep. at [page number of deposition transcript])).

2

despite his medication. (*Id.* at ¶ 34). The note stated that Plaintiff could work through his seizures. (*Id.* at ¶ 13). However, it also indicated that Plaintiff should avoid any activity that could endanger him or someone else should he have a seizure, specifically stating that Plaintiff should avoid open flames, heavy machinery, and exposure to heat which could trigger a seizure. (*Id.* at ¶¶ 13, 34). Plaintiff testified that he sent this note to Defendant's district manager, Rick Graham. (*Id.* at ¶ 13).

Plaintiff was removed from the cashier position and instead offered a steward (dishwasher) position on October 9, 2018. (*Id.* at ¶ 37). Ms. Mozzi testified that she assigned Plaintiff to this position (which was based in the kitchen) because she did not want him to have seizures in front of the children. (*Id.* at ¶ 13). Plaintiff testified that he told Ms. Mozzi and Mr. Graham that he could not work in the kitchen because it had a gas cooktop with an open flame, and he provided the doctor's note to them that explained he should not be around heat or open flames due to his seizure disorder. (*Id.* at ¶¶ 13, 36). Plaintiff testified that he informed Ms. Mozzi that he could still work in his cashier position. (*Id.* at ¶ 39).

After October 9, 2018, Plaintiff stopped coming to work. (*Id.* at ¶ 40). Plaintiff testified that he spoke with Human Resources and was told that he no longer had a Sage ID (which is apparently some kind of employee-identification number used by Defendant to identify an employee for payroll and/or HR purposes) and was not in the HR (human resources) system. (*Id.* at ¶ 40). As such, he believed that he could not clock in and could not come to work. (*Id.* at ¶ 40). Defendant sent Plaintiff a letter offering him a non-FMLA leave of absence first on October 18, 2018 and again on November 16, 2018. (*Id.* at ¶¶ 41, 43). Plaintiff testified that he did not consult with anyone at SAGE regarding the November 16, 2018 letter because it was Plaintiff's understanding that he had been terminated. (*Id.* at ¶ 45). Mr. Graham testified that Plaintiff had not been terminated, and rather was left on the payroll because of his lawsuit. (*Id.* at ¶ 23).

3

On September 19, 2019, Plaintiff filed this action, asserting three counts against Defendant: violation(s) of the Family Medical Leave Act ("FMLA") based on theories of interference and retaliation (Count One); violation(s) of the Tennessee Disabilities Act ("TDA") based on theories of discrimination and retaliation (Count Two); and violation(s) of the Americans with Disabilities Act ("ADA") based on theories of discrimination and retaliation (Count Three). (Doc. No. 1).[3] On January 15, 2021, Defendant moved for summary judgment as to all of Plaintiff's claims.

## SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Anderson*, 477 U.S. at 248. A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts.

---

[3] The first two of these counts were brought against USN also, Defendant's (sole) co-defendant. On June 17, 2020, the Court granted USN's motion to dismiss and dismissed USN from the lawsuit. (Doc. No. 22).

4

*Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018). If the summary judgment movant meets that burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 628.

A party asserting that a fact cannot be or genuinely is disputed—*i.e.*, a party seeking summary judgment and a party opposing summary judgment, respectively—must support the assertion by citing to materials in the record, including, but not limited to, depositions, documents, affidavits or declarations. Fed. R. Civ. P. 56(c)(1)(A). In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the non-moving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). Likewise, the court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id.* The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the non-moving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

## ANALYSIS

As noted, Plaintiff asserts claims under the FMLA (Count One); TDA (Count Two); and ADA (Count Three). The Court will assess each claim in turn to determine whether it survives the Motion.

5

# I.    Count One: FMLA

## A. FMLA Interference

To establish a *prima facie* claim of FMLA interference, a plaintiff must demonstrate at trial that: (1) he was an eligible employee as defined by the FMLA; (2) the defendant was an employer as defined by the FMLA; (3) the plaintiff was entitled to leave under the FMLA; (4) the plaintiff gave the defendant notice of his intention to use FMLA leave; and (5) the defendant denied him FMLA benefits to which he was entitled. *Edgar v. JAC Prod., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006) (citation omitted).

 "To qualify for benefits as an 'eligible employee' the employee must have been employed twelve months and worked 1,250 hours during the preceding twelve months." *Cross v. Dental Assisting Acad. of Louisville, LLC*, 417 F. Supp. 3d 836, 837 (W.D. Ky. 2019). In the Motion, Defendant argues that summary judgment should be granted on Plaintiff's FMLA interference claim because the undisputed evidence reveals that Plaintiff did not work for Defendant for the requisite 1,250 hours during the preceding twelve months; thus, he is not an eligible employee under the FMLA. Plaintiff does not dispute that he did not meet the 1,250-hour requirement. (Doc. No. 32 at ¶ 17). Indeed, he admitted this in his deposition. *See* Doc. No. 33-5 at 20 (Q: "Do you know while working at Sage if you worked 1,250 hours?" A: "No, I did not work that many. I was close, though."). Thus, Defendant has met its initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts as to whether Plaintiff was an eligible employee as defined by the FMLA. *Pittman*, 901 F.3d at 627-28. Thus, the burden shifts to Plaintiff who must set forth specific facts showing that there is a genuine issue for trial. *Id*. at 628.

In response, Plaintiff argues that his FMLA claim should nevertheless survive summary judgment because he requested FMLA leave by informing Defendant of his need for brain surgery that would occur *after* he became FMLA eligible. Plaintiff's argument relies on a case from the Eleventh Circuit, which he contends "is the only circuit to take up the issue," and describes its holding as "the FMLA protects requests for leave made *before* the twelve-month requirement is met when the leave itself is to commence after the twelve-month requirement is satisfied." (Doc. No. 31 at 23 (citing *Pereda v. Brookdale Sr. Living Cmtys., Inc.*, 666 F.3d 1269, 1274-75 (11th Cir. 2012))). Plaintiff asserts that he "specifically inquired about FMLA for brain surgery" when he was "close" to being FMLA eligible. (Doc. No. 31 at 24). Plaintiff cites his deposition testimony, wherein he describes his FMLA request as follows:

> Q: Now, was there any discussion about having brain surgery prior to that April 29, 2019 office visit?
>
> A: Uh-huh. . . . I think it happened in March. They needed to find the spot where I could have my surgery at. Then we were talking about—we were having discussions. I was like, okay, lets meet with like the surgeon when I start my FMLA. He was like, okay, sounds good. I unfortunately got fired right before I got approved for FMLA.
>
> Q: Did you request FMLA when you were employed by Sage?
>
> A: Yes. I asked them. They said I have to get more hours to get it.
>
> Q: So they said that—don't let me put words in your mouth. They said that you didn't have enough hours to receive FMLA?
>
> A: Yeah, that's what they said, yeah.

(Doc. No. 33-5 at 14). In short, Plaintiff asserts that a reasonable jury could determine that Defendant interfered with his FMLA rights, because Defendant was aware that he would eventually exercise his FMLA rights to undergo brain surgery.

*Pereda* does not assist Plaintiff's FMLA claim in surviving summary judgment. In *Pereda*, an employee informed her employer that she was pregnant and intended to take FMLA leave in five or six months. 666 F.3d at 1271. The employer fired the employee about two months later, before she gave birth. *Id*. The employee sued the employer for interfering with her rights under the FMLA and the district court dismissed her claim, finding that she was not eligible for FMLA leave at the time that she was fired because she had not yet worked the requisite number of hours and had not yet given birth. *Id*. at 1272-73. The Eleventh Circuit reversed. The court acknowledged that, at the time that the employee requested FMLA leave, she was not yet eligible for it, because she had not yet worked the requisite number of hours and had not yet given birth. *Id*. at 1272. However, it was undisputed that the employee would be eligible for FMLA leave by the time that her baby was due. *Id*. As stated above, the Eleventh Circuit held that the FMLA protects employees from "pre-eligibility interference" of this nature. *Id.*

Even assuming *arguendo* that the Sixth Circuit would apply the rationale of *Pereda*,[4] *Pereda* is distinguishable from the case at hand. In *Pereda*, it was undisputed that the plaintiff *would* be eligible for FMLA leave at the time in which the birth of her child would occur, and thus, when her requested FMLA leave would begin. Here, Plaintiff points to no evidence in the record that demonstrates when (if ever) he would become FMLA eligible; Plaintiff has not shown that he would have worked 1,250 hours for Defendant in any 12-month period—let alone 1,250 hours in the 12-month period preceding his surgery. Indeed, he testified in his deposition that his brain surgery was not yet scheduled, which certainly complicates his ability to show that as of a

---

[4] This does not currently seem to be a safe assumption. Inasmuch as two of the three district courts within the Sixth Circuit that have examined *Pereda* have refused to follow it. S*ee Moore v. Lenderlive Network, Inc.*, No. 14-CV-11324, 2015 WL 470599, at *4 (E.D. Mich. Feb. 4, 2015) (declining to depart from the Sixth Circuit "eligible employee" requirement in light of *Pereda*); *Dunn v. Chattanooga Publ'g. Co.*, No. 1:12–CV–252, 2013 WL 145865, at *4 (E.D. Tenn. Jan.14, 2013) (same). But nevertheless, as noted, the Court herein makes this assumption *arguendo*.

8

particular date—the date of his surgery—he would have worked 1,250 hours in the preceding 12 months.

Plaintiff also testified that he would not schedule the surgery until after the date in which he became FMLA eligible. Superficially, one might think that this would help Plaintiff; after all, based on this testimony, his surgery necessarily would come only once he did satisfy the "1,250 hours in the last 12 months" requirement, just like the plaintiff in *Pereda*. The problem with this argument is that Plaintiff has not shown that he would *ever* satisfy that requirement and thus it would be mere speculation to assume that he one day would satisfy that requirement. This stands in stark contrast to the plaintiff in *Pereda*, who established that she would have met the requirement at some point—indeed, at the relevant point, *i.e.*, prior to her taking the FMLA leave she had requested in advance for a specific time.

Thus, even when viewed most favorably to Plaintiff, the evidence (and drawing inferences therefrom) fails to support the proposition that Plaintiff had requested FMLA leave that would begin during a time in which he would undisputedly be FMLA eligible. *Compare Cross*, 417 F. Supp. 3d at 837 (applying *Pereda* and holding that an employee that was terminated one month prior to becoming FMLA eligible, but had a set FMLA leave date of July 6, 2018 wherein she would have undisputedly been FMLA eligible, was an eligible employee under the FMLA). Unlike the plaintiff in *Pereda*, as Defendant points out, indisputably (and undisputedly) "Plaintiff can show no such [] obvious [FMLA] eligibility forthcoming." (Doc. No. 34 at 4); *see also Hill v. Walker*, 737 F.3d 1209, 1215 (8th Cir. 2013) (explaining that even if the Eighth Circuit were to adopt the rationale of *Pereda*, the defendant was entitled to summary judgment on plaintiff's FMLA claim because the plaintiff could not show a pre-eligibility request for FMLA leave to begin at a time in which she would undisputedly be eligible for FMLA leave). To expand FMLA

eligibility to the limits Plaintiff requests—*i.e.*, to provide protection to any employee who expresses an interest in taking future FMLA leave whenever (if ever) the employee would become eligible for FMLA leave—would, in this Court's view, expand FMLA protections far beyond what Congress intended and far beyond what the Sixth Circuit has recognized. Accordingly, summary judgment as to Plaintiff's FMLA interference claim will be granted because Plaintiff has failed to raise a genuine issue of material fact as to whether Plaintiff was an "eligible employee" as defined by the FMLA. *Compare Bellanger v. H & E Healthcare, L.L.C.*, No. CIV.A. 10-0667-BAJ, 2012 WL 4325633, at *3 (M.D. La. Sept. 20, 2012) ("Because material questions of fact exist as to whether Plaintiff is an eligible employee under the FMLA . . . [summary judgment on] Plaintiff's interference claim is improper.")

    B.  <u>FMLA Retaliation</u>

    Defendant argues that Plaintiff's FMLA retaliation claim fails for the same reason articulated above—*i.e.*, Plaintiff is not an eligible employee under the FMLA. (Doc. No. 29-1 at 8-9). "In order to bring a retaliation claim under the FMLA, an employee must be an eligible employee under the FMLA." *Jones v. Sharp Elecs. Corp.*, 932 F. Supp. 2d 893, 904 (W.D. Tenn. 2013) (citing *Staunch v. Cont'l Airlines, Inc.*, 511 F.3d 625, 629 (6th Cir. 2008), and *Humenny v. Genex Corp.*, 390 F.3d 901, 905–06 (6th Cir. 2004)); *see also Shaw v. Total Image Specialists, Inc.*, No. 2:07-CV-00717, 2009 WL 369817, at *3 (S.D. Ohio Feb. 12, 2009) ("In the Sixth Circuit, both [FMLA retaliation and interference] theories require [plaintiff] be an eligible employee at the time he requested the leave in order to state a claim under the FMLA."). The Court agrees. For the reasons discussed above, Plaintiff has failed to raise a genuine issue of material fact as to whether he was an eligible employee under the FMLA. Therefore, summary judgment on Plaintiff's FMLA retaliation claim will be granted.

## II.     ADA

### A.  ADA Discrimination

Broadly speaking, the ADA provides a cause of action for employees who are subjected to discrimination on the basis of a disability. Actionable disability discrimination comes in multiple forms, one of which is the failure to accommodate the plaintiff's disability. Failure to accommodate is a form of disability discrimination. *Whitesell v. FMS Fin. Mgmt. Servs., LLC*, No. 3:18-CV-00496, 2020 WL 2770017, at *3 (M.D. Tenn. May 28, 2020) (citing *Tchankpa v. Ascena Retail Group, Inc.*, 951 F.3d 805, 511 (6th Cir. 2020)). It is this form (and only this form) of disability discrimination that Plaintiff asserts.

In Defendant's Memorandum of Law in support of its Motion, Defendant cites the elements of a *prima facie* case of disability discrimination applicable to claims based on indirect-evidence, which are analyzed under the three-step burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).[5] (*See* Doc. No. 29-1 at 9-10 (citing *Terminal v. United Parcel Services, Inc.*, 840 F.3d 292, 306 (6th Cir. 2016))). However, in Plaintiff's response, he makes clear that his ADA discrimination claim is premised on Defendant's alleged failure to accommodate him. (Doc. No. 31 at 10). To establish a claim of failure to accommodate, a plaintiff must establish "(1) that he is disabled, and (2) that he is 'otherwise qualified' for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged 'essential' job requirement eliminated; or (c) with a proposed reasonable accommodation." *Fisher v. Nissan N. Am., Inc*., 951 F.3d 409, 417 (6th Cir. 2020) (citation omitted). Plaintiff must

---

[5] ADA discrimination claims are analyzed under two different rubrics, depending on whether the plaintiff relies on "direct" or "indirect" evidence of discrimination. *See Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891–92 (6th Cir. 2016). As noted, claims based on circumstantial and indirect evidence are analyzed under a three-step burden shifting framework, while ADA claims that involve direct evidence are not subject to the burden shifting framework of *McDonnell Douglas*. *See id.*

additionally show that he or she "requested an accommodation," and "the employer failed to provide the necessary accommodation." *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 983 (6th Cir. 2011) (citation omitted). "Claims premised on an employer's failure to offer reasonable accommodation necessarily involve direct evidence and the [*McDonnell Douglas*] burden shifting approach [applicable to claims based on indirect evidence] is not applicable." *Fisher*, 951 F.3d at 416.

The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position such individual holds or desires . . . ." 42 U.S.C. § 12111(8); *see also E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 761 (6th Cir. 2015) (en banc). Thus, to be a qualified individual under the ADA, Plaintiff must prove that he was able to perform the essential functions or duties of the cashier position with or without reasonable accommodations. *Id.*; *Ford*, 782 F.3d at 761.

The ADA provides that in determining the "essential functions" of an employment position, "consideration shall be given to the employer's judgments to what functions of a job are essential, and if an employer had prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). Similarly, the EEOC regulations applicable to the ADA provide that the term "essential functions" means "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1360.2(n)(1). "The term 'essential functions' does not include the marginal functions of the positions."[6] *Id.* The EEOC regulations

---

[6] It is not lost on the undersigned that these definitional phrases are unhelpful. To say, that "essential functions" means "fundamental duties" is merely tautological; it also begs the question of what is "fundamental"—a term that, as substantive due process litigation reveals, can be viewed quite differently by different judges. And to say, as is

further provide that evidence of whether a particular function is essential includes, but is not limited to:

> (i) The employer's judgment as to which functions are essential;
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
> (iii) The amount of time spent on the job performing the function;
> (iv) The consequences of not requiring the incumbent to perform the function;
> (v) The terms of a collective bargaining agreement;
> (vi) The work experience of past incumbents in the job; and/or
> (vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3).

In the Motion, Defendant argues that it is undisputed that Defendant cannot perform two essential functions of his job: (1) any of his essential duties that require that he be present in the kitchen (which requires exposure to heat and high temperatures); and (2) regular attendance. (Doc. No. 29-1 at 10-12). The Court will explore these arguments below.

a. Heat Exposure

First, the Court notes that Plaintiff does not dispute, and in fact at times relies upon, the fact that he cannot work around high heat. (*E.g.*, Doc. No. 33-5 at 43 (Dep. at 74-75)). In discussing the duties of the cashier position that (according to Defendant) require exposure to heat that Plaintiff could not tolerate due to his epilepsy (hereinafter, "excessive heat"), Defendant refers only to duties that would be carried out *in the kitchen*. It appears undisputed that all such duties (hereinafter, "kitchen-based duties") would be in the kitchen (as opposed to, for example, the dish room).[7] And Plaintiff admitted in his deposition that in certain places in the kitchen (at least at

___

essentially said here, that "essential" excludes "marginal" is so obvious as to be virtually useless. But the Court will keep these definitional cues in mind for what they are worth.

[7] In his deposition, Plaintiff referred to a "dish room," which appears and presumably is (although this is not entirely clear, given the awkward phrasing of the corresponding question) a room separate and distinct from the kitchen. (Doc. No. 33-5 at 21 (Dep. at 75)). He also testified that the area where the dishes were washed, which presumably (although

certain times), it was too hot for him to work. (*E.g.*, Doc. No. 33-5 at 36 (Dep. at 135)) ("[I]
[c]ouldn't work around ovens."). On the other hand, he testified that he could be in certain places
in the kitchen (at least at certain times). (*E.g.*, Doc. No. 33-5 at 17-18 (Dep. at 61-62); *id.* at 20
(Dep. at 73)).[8] And the overall gist of his deposition testimony is quite clear: in his view, none of
the duties of the cashier position (at least as he experienced them) exposed him to excessive heat.

So the question is what (kitchen-based) duties would have exposed Plaintiff to excessive
heat and whether any of those duties are properly deemed "essential." Or to put the matter more
precisely in the current summary-judgment context, the question is whether Defendant has
removed any genuine dispute that there existed kitchen-based duties that would have exposed
Plaintiff to excessive heat and were "essential."

Defendant points to multiple items of evidence that, according to it, undisputedly supports
that the cashier position has kitchen-based duties—including duties that are properly categorized
as essential—that would require Plaintiff to be around heat. (Doc. No. 30-1 at 17-19).

First, Defendant cites the posted job description for Plaintiff's position that states one may
be "frequently exposed to . . . burns[.]" (Doc. No. 33-7 at 4). The description also lists the
position's duties as: following recipes; setting up food service stations; ensuring food is
appropriately displayed; and assisting in, cleaning, and maintaining the kitchen area. (*Id.* at 1-4).
Defendant argues that all of these duties are essential and require Plaintiff to be in the kitchen
exposed to heat.

---

this is not entirely clear) would be the dish room, got too hot for him to work in. (*Id.* (Dep. at 74-75)). However, there
is no evidence, and no one contends, that the cashier position involved duties in the dish area (or dish washing area).

[8] In his deposition, Plaintiff also provided an example of a situation where he could be in the kitchen (assuming, as
seems very likely, that "the refrigerator" was in the kitchen), but only at certain times. (Doc. No. 33-5 at 43 (Dep. at
163)) ("I could go to the refrigerator, but it had to be during the day when they are not cooking.").

14

Defendant also points to the affidavit of Defendant's in-house counsel, Lori Beard,[9] wherein she avers that that the job responsibilities of the cashier position "require[ ] a Team Member to be in the kitchen, cutting ingredients, lifting heavy objects, cleaning items. Among some of the job responsibilities, a Cashier at any SAGE venue is required to follow recipes in details, set up serving stations and buffets, keep stations stocked, ensuring all food is appropriately displayed, garnished and visually appealing, assisting cleaning and maintaining the kitchen and dining hall, and using proper food handling, storage and sanitation techniques. It is impossible to remove the element of heat from any position in a kitchen environment, including for a SAGE Cashier position." (Doc. No. 29-3 at ¶ 16). Ms. Beard's affidavit does not use the term "essential,"[10] but rather the term "required." But if in the employer's view, as set forth in the affidavit, duties are fairly described as "required," that supports a finding that such duties are "essential" within the meaning of the FMLA. Notably, even though this kind of affidavit from a defendant-employer can be criticized for being self-serving (as if an affidavit from a party would be anything else), courts routinely afford them substantial weight on a defendant-employer's motion for summary judgment. *E.g., Wells v. Shalala*, 228 F.3d 1137, 1145 (10th Cir. 2000); *Eyster v. Metro. Nashville Airport Auth.*, 479 F. Supp. 3d 706, 716 (M.D. Tenn. 2020).

Ms. Beard's affidavit and Defendant's job description firmly support that the cashier position involved kitchen-based duties. And indeed that much is undisputed. But that is not to say that these kitchen-based duties actually and necessarily would have exposed Plaintiff to excessive heat. This is crucial, because Plaintiff's testimony (which the Court finds unimpeached on this

---

[9] Plaintiff argues that the Court should not consider this affidavit because it is hearsay. Because Defendant's motion fails with respect to Count III even considering the affidavit, the Court will not take up this argument.

[10] This actually enhances the credibility of the affidavit somewhat insofar as it did something different—even if only slightly different—than merely parroting the precise legal term that is dispositive on the issue the affidavit is addressing.

point) is that he could be in the kitchen without necessarily being exposed to excessive heat. So the Court cannot assume that merely because something is a kitchen-based duty, it exposes Plaintiff to excessive heat. Defendant here needs to show the absence of *any genuine dispute* that Plaintiff has at least one kitchen-based duty that necessarily would expose him to excessive heat. To do so, it relies on Ms. Beard's averment that "[i]t is impossible to remove the element of heat from any position in a kitchen environment, including for a SAGE cashier position." (Doc. No. 29-3 at 3). But this overly general assertion is of little value here, where the question is not whether "heat" necessarily would accompany (*i.e.,* cannot be "remove[d]" from) performance of (at least some of) the duties of the cashier position. The question here is whether the cashier position involves one or more kitchen-based duties that would expose Plaintiff not just to "heat"—which of course can vary greatly in intensity—but to *excessive* heat, *i.e.*, heat that Plaintiff cannot tolerate. Ms. Beard's affidavit is of no help in that regard. Nor is the job description.

Even if Defendant had removed all doubt that at least one kitchen-based duty exposed Plaintiff to excessive heat, Defendant would still have to show that one such duty is *essential* to the cashier position. As noted, the affidavit (though not the job description) lends support to the notion the such kitchen-based duties did not merely exist, but were "essential." In answering whether a job duty is essential, Defendant's view as to what functions are essential is given deference,[11] but "it is [only] one of seven factors the court should consider, including '[t]he amount of time spent on the job performing the function' and '[t]he consequences of not requiring the [employee] to perform the function.'" *Rorrer v. City of Stow*, 743 F.3d 1025, 1042 (6th Cir. 2014) (citing 29 C.F.R. § 1630.2(n)(3)(iii), (iv)).

---

[11] *Keith v. Cty. of Oakland*, 703 F.3d 918, 926 (6th Cir. 2013) (noting that an employer's representative's judgment of what is an essential function is entitled to "deference").

16

Determinations as to what are (or are not) essential job functions "should reflect the actual functioning and circumstances of the particular enterprise involved," *Hall v. USPS*, 857 F.2d 1073, 1079 (6th Cir. 1988), and whether a job function is essential is a highly fact-specific inquiry and "is a question of fact that is typically not suitable for resolution on a motion for summary judgment." *Rorrer*, 743 F.3d at 1039. As noted above, "[t]he term 'essential functions' does not include the marginal functions of the positions." 29 C.F.R. § 1360.2(n)(1). In addition, a job task is understood by the courts to be essential if its removal would "fundamentally alter" the nature of the position. *Ford Motor Co.*, 782 F.3d at 762.

As indicated above, this Court must give due consideration to Defendant's judgment as to what functions of the cashier job are essential, including as such judgment is reflected the written job description. *See* 42 U.S.C. § 12111(8); *Wheeler*, 159 F. Supp. 3d at 849. With this in mind, the Court might have credited Defendant with having met its initial burden as the summary-judgment movant by pointing to evidence reflecting its judgment that the cashier position's kitchen-based duties are essential to the position. The problem is that Defendant has not shown that *any* alleged kitchen-based duty is one that Plaintiff cannot perform because it would expose Plaintiff to excessive heat. So Defendant has not shown that any kitchen-based duties are even relevant to its argument here. This means it simply does not matter at this stage whether any kitchen-based duties are essential, because as far as the record shows, a jury could still find that no such allegedly essential duties would disqualify Plaintiff from the cashier position by exposing him to excessive heat. Thus, Defendant has failed to meet its initial burden to show the absence of a genuine dispute that Plaintiff was not qualified for the position of cashier.

And even if Defendant had met initial burden as the summary-judgment movant to show the absence of genuine dispute that at least one kitchen-based duty both was "essential" and would

have exposed Plaintiff to excessive heat, that would not be the end of the matter. The employer's judgment as to what functions of a position are "essential," which is what Defendant really is relying on to establish the "essential" nature of the kitchen-based duties, is not conclusive. *See Rorrer*, 743 F.3d at 1039 ("If an employer's judgment about what qualifies as an essential task were conclusive, 'an employer that did not wish to be inconvenienced by making a reasonable accommodation could, simply by asserting that the function is essential, avoid the clear congressional mandate that employers mak[e] reasonable accommodations.'" (quoting *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1258 (11th Cir. 2007)). Plaintiff would still have an opportunity to carry his resulting burden of showing a genuine issue—which is obviously material and, as noted above, one of fact—as to whether these kitchen-based duties were essential.

The Court finds that he would have met his burden had it been shifted to him. For example, Plaintiff points to his supervisor's deposition, wherein she agreed that Plaintiff's "*main* job functions" were "cashier responsibilities," "checking out the kid's food," and preparing "spa water"—duties that are not kitchen-based. (Doc. No. 31 at 81-82) (emphasis added). In his deposition, he described his primary duties as preparing "spa water," preparing coffee and tea, setting up the salad bar, keeping the area clean, and "ring[ing] up" the children—also duties that are not kitchen-based. (Doc. No. 33-5 at 17-18). The Court also notes that the job description arguably *cuts against* a finding that the kitchen-based duties are essential; it does nothing to emphasize the relative importance of kitchen-based duties and includes a two sentence "Position Summary" that does not refer to kitchen-based duties. (Doc. No. 33-7 at 1). In the Reply, Defendant notes that Plaintiff does not dispute that his job duties included "helping out in the kitchen" (Doc. No. 32 at 2), but that is not dispositive as to whether this was an *essential* duty.

Moreover, as to whether any such allegedly essential kitchen-based duties would have exposed Plaintiff to excessive heat so as to disqualify him, the Court would have found that a genuine issue of (material) fact remained. Based on the testimony of Plaintiff regarding his prior experience in the cashier position, a reasonable jury could conclude that whatever the kitchen-based duties of the cashier position actually were, and regardless of which ones (if any) were essential, that they would not in fact expose Plaintiff to excessive heat so as to disqualify him.

Therefore, the Court finds that a reasonable jury could determine that Plaintiff's kitchen-based duties are either (1) marginal functions of the position, rather than essential duties, or (2) do not expose Plaintiff to excessive heat. Accordingly, Defendant's motion for summary judgment will be denied as to Plaintiff's failure to accommodate claim on this argument.

ii. Attendance

Defendant argues that Plaintiff's job required "regular in-person attendance" and that "Plaintiff simply could not reliably provide such attendance." (Doc. No. 29-1 at 12). In *E.E.O.C. v. Ford Motor Co*., 782 F.3d 753 (6th Cir. 2015) (en banc), the Sixth Circuit explained that the "general rule" is that "an employee who does not come to work cannot perform any of his job functions, essential or otherwise." *Id*. at 761 (citing *EEOC v. Yellow Freight Sys., Inc*., 253 F.3d 943, 948 (7th Cir. 2001) (en banc)). Accordingly, "regularly attending work on-site is essential to most jobs, especially the interactive ones[.]" *Id*.; *see also Popeck v. Rawlings, Co., LLC*, 791 F. App'x 535, 539 (6th Cir. 2019) ("Because regular, in-person attendance constitutes an essential function of most jobs, an employee who cannot meet a job's attendance requirements usually cannot establish qualified-individual status." (citing *Ford Motor Co*., 782 F.3d at 761–63)).

Here, Defendant argues that in-person attendance is an essential function of Plaintiff's cashier position. (Doc. No. 29-1 at 12). Even assuming *arguendo* that attendance is an essential

function of Plaintiff's position, Defendant must also meet its burden (as the moving party) to show that Plaintiff undisputedly cannot perform that essential function—*i.e.*, "cannot regularly and predictably attend the workplace—an essential function, and a prerequisite to other essential functions[.]" *Ford Motor Co.*, 782 F.3d at 766; *see also Gantt v. Wilson Sporting Goods Co*., 143 F.3d 1042, 1047 (6th Cir. 1998) (explaining that an employee who is unable to "meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA.").

In its Motion, Defendant asserts that "Plaintiff's medical condition rendered him incapacitated and unable to work one to six days per week," but Defendant does not cite to evidence in the record to support this statement. (Doc. No. 29-1 at 12). It is not the Court's job "to root through the record not unlike a pig in search of truffles to uncover any grain of evidence that might support the position of a party that chose to otherwise sit on its hands." *Penn-Daniels, LLC v. Daniels*, No. 07-1282, 2010 WL 431888, at *3 (C.D. Ill. Jan. 28, 2010) (citing *Casna v. City of Loves Park*, 574 F.3d 420, 424 (7th Cir. 2009)); *see also Emerson v. Norvartis Pharm. Corp*., 446 F. App'x 733, 736 (6th Cir. 2011) (noting that "judges are not like pigs , hunting for truffles" that might be buried in the record).

In a similar vein, in its Statement of Facts, Defendant asserts that "Plaintiff missed a lot of time at work" and that Defendant "needed him to regularly attend work and he was not able to do so." (Doc. No. 32 at ¶¶ 8, 9).[12] To support these statements with evidence of record, Defendant cites to the depositions of Plaintiff's supervisor and Defendant's district manager, wherein each testified that Plaintiff missed "a lot" of work. (Doc. No. 30-2 at 4-5) (the district manager testified that Plaintiff's supervisor complained to him that Defendant was missing "a lot of days"); (Doc.

---

[12] Plaintiff disputes these statements. (*See* Doc. No. 32 at ¶¶ 8-9).

No. 30-3 at 7, 8-9) (Plaintiff's supervisor testified that Plaintiff "missed a lot of work" and "[h]e had a problem with attending work"). The deponents' ambiguous description—that Plaintiff missed "a lot" of work—does not enable the Court to draw the conclusion that Plaintiff was unable to regularly attend work (and thus unable to perform the essential functions of his job). *Compare Wheeler*, 159 F. Supp. 3d at 851 (finding that the plaintiff could not attend his job regularly (and therefore not perform an essential function of his job) after reviewing the plethora of specific record evidence regarding the plaintiff's many absences). This is because, in the Court's view, an employee can miss "a lot" of days at work and still be—and be considered by the employer as—achieving regular attendance.[13]

Additionally, in the Statement of Facts, Defendant cites Plaintiff's deposition testimony wherein Plaintiff testified that he needs at least a day to recover after every seizure:

> A: I need a day. If I'm feeling really bad, like a second day. I always need a day to recover. My doctor even said one day. My body is really weak.
> Q: Okay. When you would have a seizure, did you always go home afterwards?
> A: Yes.
> Q: And you would go and seek medical attention? You left the job, correct?
> A: Yes.
> Q: Okay. So it wasn't that you could kind of hang out for a little while and just chill out and you could go back to work?
> A: No, couldn't do it.

(Doc. No. 30-1 at 2-3). Defendant also points to Plaintiff's testimony wherein he estimated that he has a seizure once a week: "Q. And you were having these seizures approximately once a week, correct? A. Yeah, more likely, yeah." (Doc. No. 30-1 at 17-18). As Plaintiff points out, this evidence, especially when viewing the facts most favorably to Plaintiff, does not tend to suggest that Plaintiff cannot regularly attend his job. Although this testimony discusses the frequency of

---

[13] In the Court's view, it would not be atypical for a hypothetical employee to annually use, for example, 10 days of employer-granted sick leave and four weeks of employer-granted vacation. Some might consider taking off six weeks out of 52 to be missing "a lot" of work. And yet in this example, the employee certainly could not be accused of failing to achieve "regular attendance."

Plaintiff's *seizures*, it does not establish the frequency or length of Plaintiff's *absences from work* due to these seizures. Although the Court could possibly deduce that Plaintiff was missing at least one day a week from work due to his seizures, the Court will not do so at summary judgment where the evidence (and the inferences to be drawn therefrom) must be viewed most favorably to Plaintiff, the non-moving party. Additionally, later in his deposition Plaintiff clarified that although he had seizures approximately once a week, the seizures did not always occur at work and at times he went weeks without having a seizure. Thus, according to his testimony, the seizures did not always affect his ability to attend his job. (Doc. No. 33-5 at 42, 46). In fact, Plaintiff testified that there were numerous times that he received a full paycheck where he did not have to miss any days. (*Id.*).

Viewing the evidence (and inferences to be drawn therefrom) most favorably toward Plaintiff, Defendant has not met its initial burden to establish that the undisputed facts reveal that Plaintiff was not regularly attending his job. Perhaps Defendant could have done so with citation to an attendance log or specific testimony discussing the raw number or frequency of days (or portions of days) Plaintiff missed at work. But the overly general assertions Defendant relies upon in its Memorandum of Law and Reply are not sufficient for Defendant to meet its summary judgment burden. Therefore, the Court finds that summary judgment as to Plaintiff's ADA discrimination claim should be denied.

B. ADA Retaliation

To establish a prima facie case of ADA retaliation at trial, a plaintiff must show: (1) he engaged in an activity protected under the ADA; (2) he suffered an adverse employment action; and (3) there was a causal connection between the adverse employment action and the protected activity. *Eyster*, 479 F. Supp. 3d at 719 (citing *Allman v. Walmart, Inc.*, 967 F.3d 566, 570-72 (6th

Cir. 2020)). If such a showing is made, then under the familiar *McDonnell-Douglas* framework the burden shifts to the defendant to provide a "legitimate, nondiscriminatory reason" for the adverse employment action. *Id*. (citing *Allman*, 967 F.3d at 570-72). "[T]he defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection[, which] "must be legally sufficient to justify a judgment for the defendant." *Burdine*, 450 U.S. at 255. "The defendant only has to present [evidence of] 'clear and reasonably specific' reasons that will 'frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext.'" *Harris v. City of Akron, Ohio*, 836 F. App'x 415, 419 (6th Cir. 2020) (quoting *Burdine*, 450 U.S. at 258).[14]

If the defendant succeeds in doing so, then the burden shifts back to the plaintiff to show the reason given was actually a pretext designed to mask unlawful discrimination. *Id*. "A plaintiff may prove pretext by establishing the proffered reason: (1) has no basis in fact; (2) did not actually motivate the adverse action; or (3) was insufficient to motivate the adverse action." *Id*. (citing *Allman*, 967 F.3d at 570-72).

Defendant argues (in a conclusory fashion) that there is no record evidence of any element of Plaintiff's retaliation claim and (more specifically) that he did not engage in protected conduct, without specifically pointing to any facts in the record supporting these assertions. (Doc. No. 29-1 at 13). Under Fed. R. Civ. P. 56(a) & (c), this is inadequate because Defendant (as the movant) bears the initial burden of demonstrating the absence of a genuine of material fact and must do so not by merely asserting an absence of evidence sufficient for Plaintiff to raise a genuine issue, but

---

[14] The bracketed words added by the Court to this quote are significant; they denote the difference between a burden (a) merely to *articulate* some non-discriminatory reason that *supposedly* motivated the employment decision, and (b) to provide some evidence that there was a non-discriminatory reason. Both *Burdine* and *Harris* (which, as noted was relying on *Burdine)* make clear that the employer meets its burden of production only if it presents not merely some statement of what the reason supposedly was, but rather evidence of what the reason actually was.

rather by pointing to evidence suggesting such absence. And even if Defendant had done enough to meet Defendant's initial burden on summary judgment, Plaintiff points to record evidence creating a genuine issue of material fact as to whether Plaintiff requested an accommodation.

Plaintiff argues that requests for accommodation are protected acts, and the ADA does not require an employee to use "magic words" to request an accommodation. (Doc. No. 31 at 16). Plaintiff points to evidence that he delivered numerous doctor's notes to Defendant with specific information about his limitations in response to his need for time off work. (*Id*.). Plaintiff also points to evidence that he complained of disability discrimination by contacting Defendant's human resources representative and stating that his supervisor's "discrimination has to stop." (*Id*. at 17). Plaintiff contends that he "plainly engaged in protected conduct when he raised specific concerns of discrimination which were acknowledged by Sage management." (*Id*. at 17 (citing *Yazdian v. ConMed Endoscopic Techs., Inc*., 793 F.3d 634, 646 (6th Cir. 2015) (explaining that an employee's use of a terms or art like "hostile work environment" or "discrimination" to an employer is indicative that an employee is engaging in protected activity). The Court agrees that Plaintiff has pointed to evidence from which a reasonable jury could conclude that Plaintiff engaged in protected conduct. Thus, Plaintiff has raised a genuine issue of material fact as to whether Plaintiff was engaging in protected conduct.

Defendant also argues that Plaintiff's ADA retaliation claim fails because, according to Defendant, it is clear from the record that Plaintiff is not a qualified individual under the ADA because he cannot meet the attendance requirements of his job. (Doc. No. 29-1 at 13). This argument fails because, as discussed above, Defendant has not met its burden of demonstrating the absence of a genuine issue of material fact regarding this issue.

In its Reply, Defendant asserts (for the first time) a legitimate, non-discriminatory reason for its actions. However, arguments asserted for the first time in a reply brief are waived. *See Palazzo v. Harvey*, 380 F. Supp. 3d 723, 730 (M.D. Tenn. 2019) (explaining that arguments raised for the first time in reply briefs to summary judgment motions are waived (citing *Ryan v. Hazel Park*, 279 F. App'x 335, 339 (6th Cir. 2008))). As one district court in this circuit has explained, "[t]he reply brief is not a proper filing in which to introduce a novel argument or to commence the analysis of the second and third steps of the burden-shifting framework." *Gist v. TVA Bd. of Dirs*., No. 2:08-cv-227, 2010 WL 2465484 *4 n. 4 (E.D. Tenn. June 14, 2010); see also Howard v. Cannon Indus., Inc., No. 11-CV-6100 CJS, 2012 WL 5373458, at *4 (W.D.N.Y. Oct. 30, 2012) ("In their reply brief, Defendants raise a new argument for the first time, which is that even if Plaintiff can establish a prima facie case of retaliation, they had a legitimate non-retaliatory reason for transferring her. However, the Court need not consider arguments raised for the first time in a reply brief. Therefore, Defendants have waived this argument.").

Alternatively, even if Defendant's argument regarding the existence of a non-retaliatory reason were not waived, Defendant has failed to point to record evidence that supports that argument. (*See* Doc. No. 34 at 5); *see also Burdine*, 450 U.S. at 254 (explaining that "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection[, which] must be legally sufficient to justify a judgment for the defendant."). As noted above, this failure is fatal to its ability to establish the absence of any genuine dispute on this issue. And although the Court need not even reach this step, the Court notes that Defendant's conclusory assertion that "Plaintiff has failed entirely to demonstrate that such a reason is pretextual," (Doc. No. 34 at 5), fails to carry the day for Defendant to show on summary judgment

that there is no genuine issue of material fact as to whether such proffered reason is pretextual. Therefore, summary judgment on Plaintiff's ADA retaliation claim will be denied.[15]

### III. TDA

"'A claim brought under the THA [Tennessee Handicap Act, now known as the TDA] is analyzed under the same principles as those utilized for the Americans with Disabilities Act.'" *Cardenas-Meade v. Pfizer, Inc.*, 510 F. App'x 367, 370 (6th Cir. 2013) (quoting *Sasser v. Quebecor Printing (USA) Corp.*, 159 S.W.3d 579, 584 (Tenn. Ct. App. 2004)) (alterations in the original); *see also Phipps v. Accredo Health Grp., Inc.*, No. 215CV02101STACGC, 2016 WL 3448765, at *15 (W.D. Tenn. June 20, 2016) ("Claims under the TDA are analyzed under the same principles and standards as those utilized for the ADA."); *see also Lovell v. Champion Car Wash, LLC*, 969 F. Supp. 2d 945, 950 (M.D. Tenn. 2013) ("The same general elements apply whether the claim is under the ADA or the TDA, although the TDA does not require a reasonable accommodation."); *Wheeler*, 159 F. Supp. 3d 828, 857 (M.D. Tenn.), aff'd, 666 F. App'x 453 (6th Cir. 2016) (applying ADA retaliation elements to TDA retaliation claim).

Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's TDA claim fails for the same reasons as articulated above in the Court's discussion concerning the ADA.

### CONCLUSION

---

[15] In its Motion, Defendant does not analyze Plaintiff's failure-to-engage-in-the-interactive-process claim. Nor does Defendant analyze Plaintiff's failure-to-accommodate claim beyond the "qualified individual" element discussed above. While Defendant does raise a vague, three-sentence undue hardship argument, it does not indicate that it is doing so in regard to Plaintiff's claim of failure to provide a reasonable accommodation. (Doc. No. 29-1 at 13-14). While the Court may be able to guess from the parenthetical case cite that the argument is raised in the context of a failure-to-accommodate claim, Defendant needs to explain his argument in a narrative fashion to the Court for it to be properly presented. Even if the Court were to construe it as an argument against Plaintiff's failure-to-accommodate claim, "[t]he reasonableness of a proposed accommodation is a question of fact," *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 419 (6th Cir. 2020) (citing *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 (6th Cir. 1998)), and the Court cannot decide on the scant evidence cited by Defendant that it has removed any genuine dispute as to whether granting Plaintiff's requested accommodation would impose upon it an undue hardship.

For the above-stated reasons, Defendant's Motion for Summary Judgment will be GRANTED in part and DENIED in part. Summary judgment will be granted on Plaintiff's FMLA claims. Summary judgment will be denied as to Plaintiff's ADA and TDA claims.

An appropriate Order will be entered.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE